Bernard S. GARRETT and Joseph B. Morris, Appellants,

v.

UNITED STATES of America, Appellee.

No. 24819.

United States Court of Appeals Fifth Circuit

June 13, 1968.

Rehearing Denied Aug. 26, 1968.

Certiorari Denied Nov. 18, 1968.

See 89 S.Ct. 374.

Joe Tonahill, Jasper, Tex., William F. Kemp, Austin, Tex., Emmett Colvin, Jr., Dallas, Tex., for appellants.

Jamie C. Boyd, Harry Lee Hudspeth, Asst. U. S. Attys., Ernest Morgan, U. S. Atty., El Paso, Tex., for appellee.

Before RIVES, BELL and GOLD-BERG, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Appellants Garrett and Morris were convicted of willfully misapplying national bank funds insured by the Federal Deposit Insurance Corporation in violation of 18 U.S.C.A. § 656. They were charged in a two-count indictment. The first count alleged a substantive violation of the statute; the second charged

a conspiracy to violate the statute in the same manner. They were convicted on both counts and received concurrent sentences.

There are two assignments of error. The first rests on the contention that the indictment was insufficient and thus the court erred in overruling the motion to dismiss the indictment. The second assignment is that the evidence was insufficient to support the verdict of guilty under each count. The principal question, however, whether viewed from sufficiency of the indictment or sufficiency of the evidence, is one of statutory construction and applicability. The statute, 18 U.S.C.A. § 656,[1] makes it an offense against the United States for persons in certain categories to willfully misapply the funds of various types of banking institutions including national banks and banks with deposits insured by the Federal Deposit Insurance Corporation. The statute applied to the bank involved here since it was a national bank and its deposits were so insured. This much is undisputed.

It is the position of appellants that they are not included in the categories of persons proscribed by the statute. The statute applies to officers, directors, agents, or employees of such banks and to persons " * * * connected in any capacity * * * " with such banks. Appellants were not officers, directors, agents or employees of the bank. The theory of the government is, however, that they were connected with the bank in a capacity contemplated by the statute. Thus it is their connection with the bank which must be examined.

They were the controlling stockholders in the First National Bank of Marlin, Texas. They purchased the stock, financed the purchase, and directed that the stock be placed in the name of other persons and entities. Appellants are Negroes and they determined, because of the possibility of racial prejudice in the small town of Marlin, that they should not appear of record as owners of the stock. There were 10,000 shares outstanding and they purchased a total of 5,470 shares. Of these, 3,700 shares were placed in the name of a corporation owned by appellants, Republic National Finance Company, and 1,570 shares were placed in the name of a business associate under a trust arrangement. They then caused four of their employees and associates to be elected to the seven-member board of directors of the bank.

The defalcation with which they are charged came about in their receiving a commission on a purchase of mortgages by the bank. They personally sought a package of real estate mortgages for purchase by the bank. They arranged to increase deposits in the bank by a million dollars. Garrett personally paid a $5,000 fee for a part of these deposits. The bank then purchased the mortgages

1. 18 U.S.C.A. § 656:
    "Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

    "As used in this section, the term 'national bank' is synonymous with 'national banking association'; 'member bank' means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks; and 'insured bank' includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation."

for $970,000 by a check payable to a title company. This was the full face amount of the mortgages being purchased. The seller of the mortgages then paid $189,186.04 to Valley National Mortgage Company, a corporation owned by appellants. This corporation, in turn, opened a bank account in Houston with Morris and Garrett as the only persons authorized to draw on the account. One day later they withdrew the entire $189,-186.04 by a series of checks payable to cash or to one or the other of them.

There are four elements in the substantive offense. The proof was clearly adequate as to three: One, the bank was a national bank and it was also federally insured; two, the evidence was sufficient to sustain the charge of a willful misapplication of bank funds; and three, the evidence was sufficient to sustain a specific intent to injure and defraud the bank as charged in the indictment. The other element depends on whether defendants were within the class of persons covered by the statute. On the question of elements of the offense, see Ramirez v. United States, 9 Cir., 1963, 318 F.2d 155; United States v. Vanatta, D.Hawaii, 1960, 189 F.Supp. 939.

We conclude that the statute is applicable to these defendants. They are included in the category of persons "connected in any capacity" with the bank. They purchased a controlling interest in the bank; they exercised this control through naming four employees and associates to the board of directors as a majority of the board. They were active in the affairs of the bank through increasing the deposits in an amount sufficient to purchase mortgages. They arranged for the purchase of the mortgages.

As controlling stockholders they were in a fiduciary capacity with respect to the minority stockholders as well as to the bank. Pepper v. Litton, 1939, 308 U.S. 295, 306–307, 60 S.Ct. 238, 84 L.Ed. 281; Southern Pacific v. Bogert, 1919, 250 U.S. 483, 487–488, 39 S.Ct. 533, 63 L.Ed. 1099. Moreover, Southern Pacific Co. v. Bogert makes it plain that majority stockholders exercising control are deemed trustees notwithstanding that the control is being asserted through a subsidiary corporation. The court there stated that: " * * * It is the fact of control of the common property held and exercised, not the particular means by which or manner in which the control is exercised, that creates the fiduciary obligation." 250 U.S. at p. 492, 39 S.Ct. at p. 537.

This fact of ownership here together with the activity of appellants in furtherance of control demonstrates a connection with the bank within the meaning of the statute. The purpose of the statute is to preserve and protect the assets of banks having a federal relationship such as national banks, banks with federally insured deposits, Federal Reserve banks, and Federal Reserve Member banks. It seems clear that these appellants, in their stated capacity, fall within the group of persons covered by the statute. Cf. United States v. Kahn, 7 Cir., 1967, 381 F.2d 824, cert. den., 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661.

Appellants urge that the statute is subject to strict construction by virtue of being a criminal imposition and that such a construction would eliminate them. This settled principle of statutory construction is of no avail. The statute covers appellants and the activities for which they were tried and convicted. To hold otherwise would distort and nullify the evident meaning and purpose of the legislation. United States v. Gaskin, 1944, 320 U.S. 527, 529–530, 64 S.Ct. 318, 88 L.Ed. 287.

Appellants also contend that the indictment failed to sufficiently allege willfullness and intent. There is no merit in this assertion. The indictment contained the elements of the offenses intended to be charged. It informed defendants of what they should be prepared to meet on trial; it also afforded them a sufficient basis for pleading a former acquittal or conviction in the event of

further proceedings against them for the same offenses. This meets the test of Russell v. United States, 1962, 369 U.S. 749, 762–764, 82 S.Ct. 1038, 8 L.Ed.2d 240; United States v. Debrow, 1953, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92; Hagner v. United States, 1932, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861.

Affirmed.